IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Keonakamerah Postell ) Civil Action No.: 8:09-3232-HFF-BHH
)
Petitioner, )
) **REPORT AND RECOMMENDATION**
v. ) **OF MAGISTRATE JUDGE**
)
McKither Bodison, )
)
Respondent. )

The Petitioner, a state prisoner, seeks habeas relief pursuant to Title 28, United
States Code, Section 2254. This matter is before the Court on the Respondent's Motion
for Summary Judgment. (Dkt. # 15.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and
Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial
petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on December 14, 2009.[1]  On March 2,
2010, the Respondent moved for summary judgment.  By order filed March 3, 2010,
pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised
of the summary judgment dismissal procedure and the possible consequences if he failed
to adequately respond to the motion.  On May 27, 2010, the Petitioner filed a response
opposing the Respondent's Summary Judgment Motion.

## PROCEDURAL HISTORY

The  Petitioner is currently confined at the Lieber Correctional Institution.  In August
2003, the Petitioner was indicted by the Anderson County Grand Jury for murder and

_____

[1]Although the filing date does not appear to be an issue in this case, there is no
evidence in the record regarding the date the prison authorities received this habeas
petition for forwarding to the Court. *See Houston v. Lack,* 487 U.S. 266 (1988)(holding
prisoner's pleading is considered filed when filed with prison authorities for forwarding to the
district court).  The undersigned is using the date the petition was signed as the filing date.
(Pet.)

possession of a firearm during the commission of a violent crime. The Petitioner was represented by Public Defender Robert Gamble. On December 1-3, 2003, the Petitioner and a co-defendant were tried by a jury with the Honorable J. Cordell Maddox, Jr., presiding. The co-defendant, Deitrich Norman, was tried in absentia. The Petitioner was found guilty on both charges and Judge Maddox sentenced him to seventy-five years on the murder conviction and five years on the possession of the firearm conviction, to run concurrently. (App. 460).

The Petitioner timely filed an appeal. On appeal, the Petitioner was represented by Acting Deputy Chief Appellate Defender Attorney Wanda P. Hagler. Hagler filed a petition to be relieved as counsel and an *Anders*[2] brief raising the issue of whether the trial court erred when it allowed an out of court identification of the Petitioner as the perpetrator by Ernest Paul. (App. 465; 471-72.) The Petitioner also filed a pro se brief in which he raised the issue of whether the trial court had subject matter jurisdiction. (Return Attach. # 5.) On June 13, 2005, in an unpublished opinion, the South Carolina Court of Appeals affirmed and dismissed the Petitioner's appeal. (Return Attach. # 6.) The remittitur was issued on June 29, 2005. (Return Attach. # 7.)

On May 8, 2006, the Petitioner filed an application for post-conviction relief ("PCR") alleging that his "trial counsel was ineffective for failing to move fro severance of trial in the interest of applicat's confrontation rights" and for "failing to move for a directed verdict based upon lack of evidence to prove state's case." (App. 486-87.) The Petitioner also alleged his appellate counsel was ineffective for failing "to appeal on ground of 'insufficient evidence.'" (App. 476.) On January 10, 2007, the Petitioner filed an amended application for PCR alleging his trial counsel on the following grounds, quoted verbatim:

> 1) Was counsel ineffective for failing to object to the highly prejudicial opinion testimony from a state's witness who had not been qualified as an expert?

---

[2]*Anders v. California*, 386 U.S. 738 (1967).

2

> 2) Was counsel ineffective for failing to object to the admission of the statements of the statements of what a non-testifying co-defendant, Deitrich Norman, allegedly told Investigator Williams that resulted in inadmissible hearsay, since this violated Petitioner's right to confrontation, and the hearsay testimony was highly prejudicial under the facts of this case?
>
> 3) Was counsel ineffective for failing to object to the sentence handed down by the court that was contrary to legislative intent?

(App. 493.)   On May 21, 2007, the Petitioner through attorney Daniel Hughes, filed a supplement to his PCR application raising the following grounds for relief:

> 1) Defendant's trial counsel was ineffective for failure to object to the admissibility of all cell phone records pursuant to Rule 803(6), *South Carolina Rules of Evidence*, and any applicable case law;
>
> 2) Defendant's trial counsel was ineffective for failure to object to the admissibility of evidence of defendant's flight pursuant to *State v. Pagan*, 369 S.C. 201(2006) and any other applicable case law;
>
> 3) Defendant's trial counsel was ineffective for failure to object to the hearsay testimony from Haven Thomas as to conversations he had with the victim pursuant to Rule 802, *South Carolina Rules of Evidence*.

(App. 513.) On May 23, 3007, an evidentiary hearing before the Honorable J. C. Nicholson. (App. 524-62.) The Petitioner was present and represented by Hughes. *Id*. On November 15, 2007, the PCR Court denied the petitioner relief and dismissed the Petitioner's application. (App. 570-78.)

On November 21, 2007, the Petitioner filed a Motion to Alter, Amend the Judgment Pursuant to Rule 59(e). In the Motion, the Petitioner asserted the PCR Court erred by not finding that the Petitioner's trial counsel was ineffective for failing to object to the admissibility of the co-defendant's statements, for failing to move for a directed verdict, and for failing to challenge the voluntariness of the co-defendant's statements. (App. 579-80.) On January 24, 2008, the PCR Court denied the Petitioner's Rule 59(e) motion. (App. 583.) The Petitioner then appealed the PCR Court's order of dismissal.

3

On appeal, the Petitioner was represented by Appellate Defender Robert M. Pachak with the South Carolina Commission on Indigent Defense. On July 28, 2008, Pachak filed a *Johnson*[3] petition in which he raised the following issue for review: trial counsel was ineffective in failing to object to the admissibility of redacted statements made by a non-testifying co-defendant. (State's Return Attach. # 9 at 2.) The Petitioner also filed a pro se *Johnson* petition in which he raised three issues:

> 1) Did the PCR Judge erred in ruling that counsel wasn't ineffective for failing to object to the highly prejudicial opinion testimony of a state's witness who had not been qualified as an expert?
>
> 2) Did the PCR judge erred in ruling that counsel wasn't ineffective for failing to object to the admission of statements of what a non-testifying co-defendant, Deitrich Norman, allegedly told Investigator Williams that resulted in inadmissible hearsay, since this violated Petitioner's right to confrontation, and the hearsay testimony was highly prejudicial under the facts of the case?
>
> 3) Did the PCR judge erred in ruling that counsel was not ineffective for failing to object to the sentence that was handed down by the court that was contrary to legislative intent?

(State's Return Attach. # 11 at I.)

The South Carolina Supreme Court transferred the appeal to the South Carolina Court of Appeals and on December 2, 2009, the Court of Appeals denied the Petitioner's *Johnson* petition for writ of certiorari. The Remittitur was sent down on December 18, 2009.

In this federal habeas action, the Petitioner has raised the following issues for relief, quoted verbatim:

> **Ground One:** The state court erred by allowing an identification fingering petitioner as the perpetrator made by state's witness into evidence at trial.
>
> **Supporting Facts:** Prior to trial counsel moved to suppress Ernest Paul's identification of petitioner as an inadmissible and unreliable identification. The court ruled that the photo identification was admissible. Petitioner asserts that Paul's identification was not reliable because he did not know at the

_____

[3]*Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

4

time he gave petitioner a ride that he would be a suspect and as a result none of the factors can be applied in the case. Since, Paul could not satisfy identification factors his identification was unreliable.

**Ground Two:** Counsel was ineffective for failing to object to the hearsay statements of Deitrich Norman that violated the confrontation clause.
**Supporting Facts:** Deitrich Norman was an alleged co-defendant was [not] present during trial. Norman gave numerous statements indicating that he gave someone a ride at the Bi-lo store and that he (Norman) was driving a blue and white mustang, the car matched the description of the alleged perpetrator of the crime.

**Ground Three:** Counsel was ineffective for failing to object to the prejudicial testimony of a witness who was not qualified as an expert.
**Supporting Facts:** Investigator Mike Mitchell, of the Anderson County Sheriff's Department was allowed to give highly prejudicial opinion testimony concerning biological and forensic testimony as evidence. Mitchell had no training in the field and was not qualified as a expert witness by the trial court. Resulting the denial of a fair trial and ineffective assistance of trial counsel for not objecting.

**Ground Four:** Counsel was ineffective for failing to object to the sentence handed down by the court that was contrary to legislative intent The envelope to 3 Petitioner's filing was stamped by Lieber Correctional Institution. However, there was no date on the Lieber stamp. In light of the fact that the envelope was postmarked on December 14, 2009, for the purposes of this filing, Respondent is treating December 14, 2009 as the date of filing.
**Supporting Facts:** The statute for punishments for murder is S.C. Ann. §16-3-20, provides death, life or thirty. The statute does not provide a sentencing range of 30 to life therefore the statute is conjunctive, it's either life or thirty by the plain language of the statute. Counsel was ineffective for failing to object to the sentence as unconstitutional under the statutory scheme of 16-3-20.

(Pet. 5-10. )[4]

---

[4]The Petitioner was recently granted a motion to amend his habeas petition to include arguments relating to a recent amendment to this code section. (Dkt,. # 34.) However, the grounds upon which he seeks habeas relief remained the same.

<u>**APPLICABLE LAW**</u>

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the

6

granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

## EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must

present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (I) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> © An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and © are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the

8

state courts before he can proceed on the claim in this court.  The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal.  SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has

procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir.

10

1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

**DISCUSSION**

**Ground One**

In Ground One, the Petitioner alleges the trial court erred by allowing into evidence the in-court identification of the Petitioner as the perpetrator by one of the state's witness, Ernest Paul. At trial, Paul testified that the Petitioner was the person he gave a ride to on the day of the murder. The Petitioner contends that this identification was unreliable because Paul did not know the Petitioner would be a suspect when he gave him a ride. He

further asserts that none of the factors normally used in determining whether an identification was reliable were present.

At trial, following the Petitioner's objection, the trial court held an in camera hearing regarding the admissibility of Paul's identification of the Petitioner. (App. 90-91.) During the hearing, Paul testified that on March 22, 2003, he was driving in a rural area during the day when he saw the Petitioner on the side of the road jogging. (App. 92-3.) Paul testified that he stopped because he thought the Petitioner was someone that he knew. (App. 93.) Paul indicated that once he realized that the Petitioner was not the person he thought he was, Paul apologized. (App. 94.) Paul testified that the Petitioner then asked if Paul would drive him to south side of Iva for $20. *Id.* Paul agreed and the Petitioner got into Paul's front passenger seat. (App. 95.) Paul testified that he had a clear view of the Petitioner during the drive which took approximately fifteen minutes. *Id.* Paul testified that he saw a little blood on the Petitioner's tank top during the drive and that after seeing the blood, he paid special attention to the Petitioner's appearance. (App. 96.) Paul testified that a few days later, after hearing that a body had been discovered, he called his uncle, who was a lieutenant for the Iva Police Department. (App. 96.) He testified that his uncle told him to contact Jimmy Ray Sutherland, the chief of police for Iva. *Id.* Paul testified that he went to Chief Sutherland's office and, on Chief's Southerland's desk, he saw a picture of the person to whom he had given a ride. (App. 97.) Paul testified that he remembered that the Petitioner had a lazy eye with a droopy eyelid. *Id*. Paul testified that he was 100 percent sure the man in the picture was the man he gave a ride to on March 22. (App. 97-98.)

Chief Sutherland also testified at the hearing. (App. 101-107.) He testified that Paul had called him on March 28, 2003, and told him that he had picked up a man with some blood on him the Saturday before. (App. 102.) Chief Sutherland asked Paul to come to his office to give a statement. *Id.* Chief Sutherland testified that at that time he had some

statements and five or six different pictures on his desk , including one of the Petitioner, and that his desk was also covered with other documents.   (App. 102-03; 105.)   Chief Southerland testified that when Paul came into his office,  he did not direct Paul's attention to the Petitioner's picture. (App. 103.)  He testified that  he did not even realize the picture was out where anyone could see it.  (App. 106.)  Chief Sutherland testified that Paul was 100 percent sure that the picture was of the man to whom he had given a ride.  (App. 104.)  Chief Southerland also testified that at that time, the Petitioner was not a prime suspect in the murder investigation. *Id.*  Chief Sutherland had the Petitioner's picture because he had received a tip that the Petitioner and the victim were supposed to meet at the Burger King where the victim was shot.  (App. 105.)  Chief Sutherland testified that he had planned on presenting Paul a photograph lineup, but when Paul came into his office he immediately identified the Petitioner.  (App. 106.)

The Petitioner's trial counsel moved to exclude Paul's in-court identification. (App. 107.)  Trial counsel argued that the out-of-court identification process was tainted by the fact that the photos were out on the desk along with several other suspects.  *Id*.  The trial court disagreed and allowed the in-court identification to be presented to the jury. (App. 109.)  The Petitioner appealed this issue and the South Carolina Court of Appeals affirmed in a unpublished memorandum opinion.  (State's Return Attach. # 6.)

An identification made at an out-of-court show-up only taints an in-court identification if the show-up itself is unconstitutionally suggestive. *United States v. Johnson*, 114 F.3d 435, 441 (4th Cir. 1997).  The admission of a pre-trial identification before a jury may contravene due process if, in the totality of the circumstances, the identification procedure is so unduly suggestive and conducive to mistake as to render the identification unreliable. *Id.*  The Supreme Court has established a two-step analysis for assessing whether testimony regarding a pre-trial identification should be admitted into evidence.  *United States v. Wilkerson*, 84 F.3d 692, 695 (4th Cir. 1996) (*citing Manson v. Brathwaite*, 432 U.S.

98 (1977); *Neil v. Biggers*, 409 U.S. 188 (1972)).  First, the court must assess whether the challenged pre-trial identification was unduly suggestive.  *Id*.  If the procedure was unduly suggestive, however, the identification evidence may nonetheless be deemed admissible if it was reliable.  *Id.* The pertinent factors in assessing reliability include: (1) the witness's opportunity to view the perpetrator at the time of the offense; (2) the witness's degree of attention at the time of the offense; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the defendant as the perpetrator at the time of the confrontation; and (5) the length of time between the offense and the confrontation.  *Id.*

Here, first there is no evidence that Paul's out-of-court identification procedure was unduly suggestive.  Both Paul and Chief Sutherland testified that Paul identified the Petitioner's picture which was sitting on the Chief's desk without any prompting and it was never presented to him.  Even if the identification procedure was suggestive, there was sufficient evidence of Paul's identification to establish its reliability. Paul indicated that he spent more than fifteen minutes with the Petitioner that afternoon.  Paul also indicated that his view of the Petitioner was unobstructed, and it was daylight.  He also indicated that he paid close attention to the Petitioner once he saw blood on the Petitioner's shirt.  Both Paul and Chief Sutherland testified that Paul was 100 percent certain of his identification. Furthermore, only six days had elapsed between the day Paul had given the Petitioner a ride and the photo identification.  Based on the totality of the circumstances surrounding Paul's out-of-court identification of the Petitioner, the identification was reliable and admissible.  Thus, even if the initial identification of the Petitioner's photograph on Chief Southerland's desk was unduly suggestive, the trial court did not err in admitting Paul's testimony and in-court identification.

Based on the foregoing, the undersigned finds that the state court's decision is not contrary to clearly-established federal law, and the decision was not unreasonable. The trial

court considered all of the factors in determining whether the identification evidence was reliable. Furthermore, the state court did not unreasonably apply federal law to the Petitioner's claim. Accordingly, this ground is without merit and should be dismissed.

**Ground Two**

In Ground Two, the Petitioner alleges trial counsel was ineffective for failing to object to the hearsay statements of his absent co-defendant, Deitrich Norman, which the petitioner alleges violated his rights under the confrontation clause. In his statements, which were redacted, Norman stated he was driving a blue and white Mustang and he gave someone a ride at the Bi-Lo.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington,* 466 U.S. 668 (1984). First, the Petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the Petitioner must show that the deficient performance actually prejudiced him, i.e. "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Furthermore, the Court in *Strickland* held that the review of trial counsel's performance is "highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that . . . under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689) (internal citations omitted); *see also Hunt v. Lee,* 291 F.3d 284 (4th Cir. 2002) (similar holding).

At the PCR hearing, trial counsel testified that he felt he did not have standing to make an objection to the statements. (App. 529.) Trial counsel testified that he thought that the redacted statements by Norman were admissible as to the guilt of only Norman, and thus he believed that he was without standing to object. (App. 529-30; 534-35.) Trial

counsel also testified that he did not request a special jury instruction regarding the statements because he did not want to call attention to the fact that the Petitioner's name was redacted. Trial counsel acknowledged that he thought the jury would infer that it was the Petitioner's name that was redacted. (App. 532.) Trial counsel also testified that he believed that the Petitioner was not prejudiced by the statements. (App. 533.)

The PCR Court determined that trial counsel had given a valid strategic reason for not objecting to the introduction of Norman's statements - he believed he did not have standing. (App. 576.) The PCR Court also noted that trial counsel had testified that he had managed to have references to the Petitioner redacted in the statements which were introduced. (App. 572.) The PCR Court concluded that trial counsel was not deficient and furthermore that the Petitioner was not prejudiced. (App. 575-76.)

"The Confrontation Clause of the Sixth Amendment, which was extended to the states by the Fourteenth Amendment, guarantees the right of a criminal defendant to confront witnesses against him, and this includes the right to cross-examine witnesses." *Richardson v. Marsh,* 481 U.S. 200, 206 (1987). In *Bruton v. United States,* 391 U.S. 123 (1968), the Supreme Court held that in a joint trial the admission of a non-testifying co-defendant's statement that expressly inculpates the defendant violates the defendant's rights under the Confrontation Clause and a limiting instruction is insufficient to remove any prejudice to the defendant. *Id.* at 136-37. In *Bruton,* two defendants were accused of participating in the same crime and both were tried jointly. *Id.* at 124. One defendant confessed, naming and incriminating the other defendant. *Id.* The trial judge instructed the jury only to consider the confession against the confessing defendant. *Id.* at 125. The Supreme Court found that a Confrontation Clause violation, caused by the admission of a nontestifying codefendant's "powerfully incriminating" confession, is not necessarily cured by a limiting instruction. *Id.* at 135-36.

Subsequently, in *Richardson v. Marsh*, 481 U.S. 200, however, the Court clarified that a jury instruction can cure a Sixth Amendment violation where the statement does not expressly implicate the defendant, but only becomes incriminating by virtue of an inference from other evidence. The Court specifically held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson,* 481 U.S. at 211. *See also United States v. Vogt*, 910 F.2d 1184 (4th Cir. 1990)(holding *Bruton* did not bar admission of redacted statement which did not "on its face" incriminate the defendant even though incriminating import was certainly inferable from other evidence that earlier had been admitted properly against him.). Likewise, here, Norman statements were redacted to exclude any references to the Petitioner and thus were properly admitted at the Petitioner's trial. Furthermore, the trial court issued jury instructions admonishing jurors not to consider Norman's out-of-court statements in the case against the Petitioner. Accordingly, the Petitioner's Confrontation Clause rights were not violated and trial counsel was not deficient for failing to object to these statements.

The Petitioner relies upon the Supreme Court's decision in *Gray v. Maryland*, 523 U.S. 185 (1998). *Gray* can be distinguished from the present case. In *Gray,* the Court clarified the significance of a fully redacted confession in determining a *Bruton* issue. The Court held that a confession redacted so as to merely replace a defendant's name with a blank and the word "delete" falls within the "class of statements to which *Bruton's* protections apply." *Id.* at 197. Even though the trial court had given the jury a limiting instruction in *Gray*, the Supreme Court focused its analysis on the adequacy of the redaction. The Supreme Court distinguished the confession in *Gray* from the fully redacted confession in *Richardson* because the in *Gray* the prosecution "ha[d] simply replaced the nonconfessing defendant's name with a kind of symbol, namely the word 'deleted' or a

blank space set off by commas." *Id.* at 192. Therefore, the Court found that the *Gray* confession was improper because, unlike the confession in *Richardson,* it "refer[red] directly to the 'existence' of the nonconfessing defendant." *Id.* Like in *Richardson*, here, Norman's statements were redacted so as to not refer to the Petitioner by any means. Furthermore, the undersigned notes that in his statements Norman did not confess to murder or any wrongdoing in relation to the victim in this case.

Based on the foregoing, the undersigned finds that the PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this issue is without merit and should be dismissed.

**Ground Three**

In Ground Three, the Petitioner alleges trial counsel was ineffective for failing to object to the testimony of Investigator Mike Mitchell of the Anderson County Sheriff's Department because he was not qualified as an expert. In his PCR application, the Petitioner alleged that Mitchell improperly testified about the victim's brain injury, what happened after the bullet went through the victim's brain, and blood evidence. (App. 495-97.)

At the PCR hearing, trial counsel acknowledged that Mitchell was not qualified at the Petitioner's trial as an expert in forensic pathology. (App. 539-40.) Trial counsel testified that Mitchell worked in the forensic section of the sheriff's office and had testified in almost every case that trial counsel had tried. (App. 540.) Trial counsel testified that he did not recall if Mitchell gave an opinion or not during his testimony. *Id.* Trial counsel testified that he did not object because he must have thought Mitchell was qualified to give such an opinion and furthermore the information was going to come out during testimony regarding the autopsy. *Id.* The PCR Court found that trial counsel was not deficient for not objecting to the testimony of Investigator Mitchell. *Id.* Further, the PCR Court found that trial counsel had given a valid strategic reason for not objecting to Mitchell's testimony. (App. 575.)

At trial, a forensic pathologist, who was qualified to testify as an expert in forensic pathology, (App. 238) testified about the victim's brain injury and the effect of the gunshot. (App. 241.)   He testified that the victim would have been immediately unconscious, and his heart and breathing would have stopped almost instantly as a result of the gunshot wound to his head. *Id*. Thus, Mitchell's testimony was merely cumulative and therefore trial counsel's decision not to object to Mitchell's testimony constituted a reasonable strategic decision. Furthermore, the Petitioner fails to show how he was prejudiced by trial counsel's failure to object to Mitchell's testimony. As already noted, Mitchell's testimony regarding the victim's bodily response to the gunshot to the head was cumulative to the testimony of the forensic pathologist in that regard.  Further, the testimony did not implicate Petitioner as the person who shot and killed the victim.

Although the Petitioner disagrees with trial counsel's trial strategy, he fails to assert any facts that overcome the presumption that his approach was a sound trial strategy under the circumstances.  *Rose v. Lee,* 252 F.3d 676, 693 (4th Cir. 2001) (holding "[w]hen counsel make a reasonable strategic choice based upon an investigation of the facts, this Court must defer to that strategic choice.").  The record supports the PCR court's decision that trial counsel was not deficient for failing to object to Mitchell's testimony and additionally, the Petitioner has not shown any prejudice.  Based on the foregoing, the undersigned finds that the PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this issue is without merit and should be dismissed.

**Ground Four**

In Ground Four, the Petitioner alleges trial counsel was ineffective for failing to object to the seventy five-year sentence for the murder conviction imposed by the trial court which he alleges was contrary to legislative intent.  The Petitioner contends that his sentence was invalid because S.C. Code Ann. § 16-3-20  limits the sentencing options for a murder

conviction to either life, death, or thirty years confinement.  The PCR Court found the Petitioner's claim lacked merit.  (App. 577.)  The PCR Court found that the Petitioner's sentence was within the range provided by the statute. *Id.*

At the time, the Petitioner was sentenced, § 16-3-20 provided that "[a] person who is convicted of or pleads guilty to murder must be punished by death, by imprisonment for life, or by a mandatory *minimum* term of imprisonment for thirty years."  S.C. Code Ann. § 16-3-20 (emphasis added).  The Petitioner was recently granted a motion to amend his habeas petition to include arguments relating to a recent amendment to this code section. (Dkt,. # 34.)  Section 16-3-20 (A) was amended in June 2010, and now reads, in part:  "A person who is convicted of or pleads guilty to murder must be punished by death, or by a mandatory minimum term of imprisonment for thirty years to life."  The Petitioner contends that this amendment illustrates the South Carolina General Assembly's legislative intent in enacting the prior version.  He contends that a sentence for murder for a minimum of thirty years meant that a defendant was to serve thirty years and not that a judge could sentence a defendant to a term of thirty years to life. However, the statute provides that a person convicted of murder may be sentenced to death, life, or a mandatory minimum of thirty years to life and it further provides that a defendant sentenced to a mandatory minimum term of imprisonment of thirty years to life is not eligible for early release or parole.

If a statute's "terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense, unless it fairly appears from the context that the Legislature intended to use such terms in a technical or peculiar sense." *Etiwan Fertilizer Co. v. South Carolina Tax Comm'n,* 60 S.E.2d 682, 684 (S.C. 1950).  To read this code section as the Petitioner suggests, would read several words out of the phrase "a mandatory minimum term of imprisonment for thirty years to life."  A statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous." *In re Decker,* 471 S.E.2d 462, 463 (S.C. 1995) (citation omitted).  If the

legislature had wanted to provide that a defendant could only be sentenced to thirty years, it could have easily and clearly done so.

A seventy-five year sentence is clearly allowed under § 16-3-20. Thus, trial counsel was not ineffective for failing to object to the Petitioner's sentence. Based on the foregoing, the undersigned finds that the state court's decision is not contrary to clearly-established federal law, and the decision was not unreasonable. Furthermore, the state court did not unreasonably apply federal law to the petitioner's claim. Accordingly, this ground is without merit and should be dismissed.

### CONCLUSION

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 15) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

September 13, 2010
Greenville, South Carolina


**The Petitioner's attention is directed to the important notice on the next page.**